IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CRIMINAL NO. 07-666 |
| | : |
| JOHN GRAY | : |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                              **NOVEMBER 21, 2008**

Presently before this Court is Defendant John Gray's ("Gray") Motion to Dismiss the Indictment charging Gray with two counts of illegally transferring a firearm in violation of 26 U.S.C. §§ 5812, 5845(a), 5861(e) and 5871, and one count of illegal possession of a firearm in violation of 26 U.S.C. §§ 5845(a)(6), 5845(b) and 5871. For the following reasons, the Motion will be denied.

I.    **BACKGROUND**

At all relevant times, Gray was employed by Clayton's Hunting and Fishing, Inc. ("Clayton's"), as a salesperson. Clayton's is a federally licensed firearms dealer. Its Title 1, Class III license permits the acquisition and disposition of registered fully automatic weapons, silencers and other items. Gray is listed as a "responsible person" on the license for Clayton's.

During the course of Gray's employment, individuals came into Clayton's attempting to liquidate the contents of the estate of a deceased family member. Gray made a bulk purchase of the estate, consisting of a variety of firearms and firearms-related items, on behalf of the store. Included in the estate were two alleged silencers and a Japanese firearm from World War II

("World War II firearm"), which the Government alleges is a machine gun. Gray claims that he examined the two alleged silencers and was unsure if they were actual silencers, as many fake silencers are on the market to simply add cosmetic appeal to a gun. Gray asserts that, after lengthy discussions, he agreed with the estate representative to have the alleged silencers destroyed. Gray further claims that he did not believe the World War II firearm was a machine gun.

On January 10, 2006, the Government's cooperating witness, a gunsmith, received a telephone call from Gray, with whom he was friendly, and with whom he had legitimate business dealings. The Government alleges that Gray arrived at the witness's business shortly after the telephone call and, after leaving briefly to go to his car, returned to the business and handed the witness a brown paper bag containing the two alleged silencers. The Government further claims that Gray explained that he or his associates had recently purchased a large amount of weapons, including a sub-machine gun and two silencers, and that it was unclear whether the sub-machine gun had appropriate paperwork to be legally transferred.

On February 3, 2006, the witness met with Gray at the witness's business. During this meeting, the witness allegedly told Gray that he had looked at the silencers that Gray had left with him. The Government alleges that Gray initially responded that he did not know what the witness was talking about, but then told the witness that he could do whatever he wanted with the silencers. The Government also claims that Gray told the witness (1) that no one knew that the witness had the "cans," (2) that their original owner was dead, and (3) that the silencers were threaded for a Mac or an Uzi and designed for use with 9 mm or .380 caliber ammunition. Gray, however, claims that he gave the two alleged silencers to the witness with the intent that they be

2

destroyed. The witness subsequently turned the alleged silencers over to the FBI.

On October 1, 2006, the witness picked up Gray at Gray's home. The Government alleges that Gray brought along a gun case and instructed the witness to drive to a machine shop in the Philadelphia area. The Government claims that, once inside the machine shop, Gray opened up the gun case and displayed the World War II firearm to the witness and an unknown individual. The Government alleges that, after some discussion, all three men agreed that the firearm was operable and likely unregistered with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). The Government further claims that the unidentified man stated that it was a rare gun that fired 6.5 mm ammunition and asked to keep the firearm so that he could disassemble it and figure out how it operated.

On November 8, 2006, Gray and the witness went to the same machine shop to purchase shelving and equipment. The Government alleges that, as they were leaving, the unidentified man stated that he was getting "that gun." The Government further claims that the three men then examined the World War II firearm and discussed cutting it apart in a manner which would allow it to be reassembled at a later date, but ultimately decided not to cut the weapon. The Government asserts that Gray then took the firearm from the unidentified man and put it in the witness's truck. The Government further alleges that Gray then requested that the witness temporarily store the firearm for Gray. Gray, however, claims that he gave the firearm to the witness with the intent that it be destroyed. The witness subsequently turned the firearm over to the FBI.

On October 24, 2007, Gray was indicted on two counts of illegally transferring a firearm in violation of 26 U.S.C. §§ 5812, 5845(a), 5861(e) and 5871, and one count of illegal possession

of a firearm in violation of 26 U.S.C. §§ 5845(a)(6), 5845(b) and 5871. Gray now motions this Court to dismiss the indictment on the grounds that his prosecution violates due process and his right against self-incrimination.

## II. DISCUSSION

Gray argues that compliance with the National Firearms Act ("NFA"), 26 U.S.C. §§ 5801-5872, is not possible by a defendant who is an employee of a licensed firearms dealer and who passively comes into possession of unregistered NFA firearms in the regular course of business. Therefore, Gray contends that any attempt to prosecute him is an unconstitutional violation of due process and contrary to his right against self-incrimination. As explained below, Gray's Motion is without merit.

The Secretary of the Treasury is required by the NFA to maintain a central registry of firearms, known as the National Firearms Registration and Transfer Record ("NFRTR"). 26 U.S.C. § 5841(a). Machine guns and silencers are firearms within the meaning of the NFA, 26 U.S.C. § 5845(a). For this reason, both are required to be registered in the NFRTR.

Machine guns and silencers may not be transferred unless the transferor files a written application which: (1) applies for the transfer of the firearm and registration of the transferee with the Attorney General; (2) contains a stamp indicating payment of required tax; (3) identifies the transferee as required by the Attorney General, and includes the transferee's fingerprints and photograph; (4) identifies the transferor as required by the Attorney General; (5) identifies the firearm; and (6) indicates on the application form that the Attorney General has approved the transfer and registration of the firearm to the transferee. 26 U.S.C. § 5812.

"While it is the transferor of the firearm that is charged with the duty of obtaining the

necessary authorization for the transfer, the [NFA] specifically provides that 'the transferee of the firearm shall not take possession of the firearm unless the Secretary has approved the transfer and registration of the firearm to the transferee . . . .'" U.S. v. Rivera, 58 F.3d 600, 601 (11th Cir. 1995) (quoting 26 U.S.C. § 5812(b)).

The NFA prohibits individuals from receiving, possessing or transferring a firearm that is not registered in the NFRTR. 26 U.S.C. § 5861(d). Under the Act, "applications shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law." U.S. v. Thompson, 361 F.3d 918, 920 (6th Cir. 2004) (citations omitted). Ownership of machine guns is prohibited by the Firearms Owners' Protection Act of 1986 ("FOPA"), which makes it "unlawful for any person to transfer or possess a machine gun." 18 U.S.C. § 922(o). However, there are no federal statutes which prohibit the possession or transfer of silencers. Also, although guns with attached silencers are illegal under Pennsylvania law pursuant to 18 Pa.C.S.A. § 908 as a prohibited offensive weapon, Pennsylvania law does not prohibit the possession of silencers themselves.

The ATF provides answers to "Frequently Asked Questions," which can be found in its published book, Federal Firearms Regulations Reference Guide (2005), and on its official website, http://www.atf.gov/firearms/faq/faq2.htm#m9. Under Section M, titled "Firearm – National Firearm Act (NFA)," the ATF advises: "What should a person do if he or she comes into possession of an unregistered NFA firearm? Contact the nearest ATF office immediately."

Gray argues that following the ATF's advice would "hazard Mr. Gray to criminal prosecution, instigated by this very contact." (Def.'s Mot. Dismiss at 9.) Therefore, Gray maintains that contacting the ATF would violate his right against self-incrimination. We

disagree.

The Fifth Amendment prevents an individual from being "compelled in any criminal case to be a witness against himself." Mitchell v. U.S., 526 U.S. 314, 327 (1999) (quoting U.S. CONST. amend. V). The privilege protects an individual against compulsion to make any disclosure which he reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used. Kastigar v. U.S., 406 U.S. 441, 444-45 (1972).

Contrary to Gray's assertion that contacting the ATF would violate his right against self-incrimination, statements made to authorities pertaining to the registration of a firearm are immunized by statute. U.S. v. Freed, 401 U.S. 601, 606 (1971). Pursuant to 26 U.S.C. § 5848,

> [n]o information or evidence obtained from an application, registration, or records required to be submitted or retained by a natural person in order to comply with any provision of . . . [26 U.S.C. §§ 5801 et seq.] or regulations issued thereunder, shall . . . be used, directly or indirectly, as evidence against that person in a criminal proceeding with respect to a violation of law occurring prior to or concurrently with the filing of the application or registration, or the compiling of the records containing the information or evidence.

26 U.S.C. § 5848(a). The Supreme Court has approved this provision as providing sufficient protection under the Fifth Amendment. Freed, 401 U.S. at 604-07. Further, the Third Circuit recently noted that any defects in the prior firearms registration requirement have been eliminated by the immunity provision in 26 U.S.C. § 5848. See U.S. v. Sivik, 192 Fed. Appx. 127, 128 (3d Cir. 2006).

Gray also argues that "it is offensive to due process" to require an employee of a licensed firearms dealer who "passively" comes into possession of unregistered NFA firearms to comply with the NFA registration requirements. In support of his position, Gray relies on U.S. v. Dalton, 960 F.2d 121 (10th Cir. 1992). In Dalton, the defendant was an attorney who accepted a machine

gun as a fee from a client. Dalton, 960 F.2d at 122. The client was a licenced firearms dealer who had converted the firearm to be fully automatic. Id. Dalton argued that because possession of a machine gun was unlawful under 18 U.S.C. § 922(o), any application to register the machine gun would be denied pursuant to 26 U.S.C. § 5812, which mandates the denial of registration applications "if the transfer, receipt, or possession of the firearm would place the transferee in violation of law." Id. at 123. Because registration would be denied, Dalton argued that it was impossible for him to comply with the law, and thus, it violated "fundamental fairness to convict him for failing to do an act which everyone agrees he could not perform." Id. The Tenth Circuit agreed, holding that the conviction was constitutionally infirm. Id. at 126.

The reasoning of Dalton, however, has been explicitly rejected by the Third Circuit. In U.S. v. Grier, 354 F.3d 210 (3d Cir. 2003), the defendant, who manufactured machine guns and sold them to a cooperating witness, argued that the NFA offended due process because prosecuting an individual for failing to register a firearm that the government would not permit to be registered was unfair. Grier, 354 F.3d at 213-14. The Third Circuit rejected this argument, noting that Dalton had been rejected by every court of appeals which had considered this issue.[1] Id. at 214. The court went on to state that courts which have rejected Dalton did so because "the two statutes are easily reconcilable because one can comply with both the NFA provisions and the FOPA 'by refusing to deal in newly-made machine guns.'" Id. (quoting Morton v. Mancari, 417 U.S. 535, 550 (1974)). "Since the 'two statutes are capable of co-existence, it is the duty of

---

[1] As the Third Circuit noted, Dalton was rejected by the following courts of appeals: U.S. v. Jones, 976 F.2d 176, 182-83 (4th Cir. 1992); U.S. v. Ardoin, 19 F.3d 177, 179-80 (5th Cir. 1994); U.S. v. Ross, 9 F.3d 1182, 1193-94 (7th Cir. 1993), vacated on other grounds, 511 U.S. 1124 (1994); U.S. v. Elliott, 128 F.3d 671, 672 (8th Cir. 1997); Hunter v. U.S., 73 F.3d 260, 261-62 (9th Cir. 1996); U.S. v. Rivera, 58 F.3d 600, 601-02 (11th Cir. 1995).

the courts . . . to regard each as effective.'" Id. (quoting Morton, 417 U.S. at 551).

Gray attempts to distinguish this case from Grier, arguing that Grier could have avoided possessing the firearms by merely refraining from manufacturing them, while Gray was merely a passive recipient. Gray's argument, however, ignores the fact that Gray could have refused to accept the firearms, or if he truly came into possession of them by accident, he could have turned them over to the ATF and received immunity under 26 U.S.C. § 5848. Further, even if the Third Circuit were to overrule Grier and follow Dalton, the due process defense would not apply to the alleged silencers because the Tenth Circuit has limited its ruling in Dalton to machine guns.[2] Therefore, this Court finds that the Government's prosecution of Gray violates neither Gray's Fifth Amendment rights nor his due process rights and, as such, Gray's Motion to Dismiss the Indictment must be denied.

An appropriate Order follows.

---

[2] In U.S. v. McCollom, 12 F.3d 968, 970-71 (10th Cir. 1993), the defendant attempted to rely on Dalton to support his claim that prosecuting him for possession of an unregistered sawed-off shotgun was a due process violation. The Tenth Circuit rejected this claim, stating that Dalton was limited to situations, such as machine guns, where a separate criminal statute made registration of the firearm impossible. Since there was no federal or state statute outlawing the possession of short-barreled shotguns, there was no due process violation. Id.

8

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN GRAY | CRIMINAL NO. 07-666 |

## ORDER

AND NOW, this 21 ok day of November, 2008, upon consideration of Defendant John Gray's Motion to Dismiss the Indictment (Doc. No. 22), and the responses thereto, it is hereby **ORDERED** that the Defendant's Motion is **DENIED**.

xc: Speedy Trial

BY THE COURT:

_____
ROBERT F. KELLY
SENIOR JUDGE